# CHIJIAN ZHANG ET AL. *v.* OMNIPOINT COMMUNICATIONS ENTERPRISES, INC., ET AL.
## (SC 16959)

Norcott, Katz, Palmer, Zarella and Levine, Js.

Argued October 21, 2004—officially released February 1, 2005

*Nathalie Feola-Guerrieri,* with whom, on the brief, was *Daniel Shepro,* for the appellants (plaintiffs).

*Stephen J. Humes,* with whom were *Charles D. Ray* and, on the brief, *Dennis F. Kerrigan, Jr.,* and *Michael Menapace,* for the appellee (defendant Omnipoint Communications, Inc.).

*Robert J. Bourne* and *Vincent P. Pace* filed a brief for the Connecticut Light and Power Company as amicus curiae.

*Opinion*

KATZ, J. The plaintiffs, Chijian Zhang and Yuzhi Hu, brought this action alleging that the defendant,[1] Omnipoint Communications, Inc., also known as Voicestream Wireless, had trespassed on their property by placing wireless telecommunications equipment on and near a tower installed by the Connecticut Light and Power Company (power company), which has easement rights over the plaintiffs' property. The trial court rendered summary judgment in favor of the defendant on the grounds that the power company's easement rights for "telephone purposes" encompass use for wireless telecommunications and that the power company could partially assign its easement rights to the defendant. The plaintiffs now appeal from the trial court's judgment,[2] claiming that the court improperly: (1) construed the easement to include wireless telecommunications; (2) concluded that the defendant had obtained a valid partial assignment of the power com-

---

[1] The plaintiffs originally brought this action against Omnipoint Communications Enterprises, Inc., and Omnipoint Communications, Inc. Prior to the trial court's ruling on the defendants' motion for summary judgment, the plaintiffs withdrew their complaint against Omnipoint Communications Enterprises, Inc. Therefore, we refer to Omnipoint Communications, Inc., as the defendant in this opinion.

[2] The plaintiffs appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

pany's rights under the easement; and (3) declined to consider whether the defendant's use had overburdened the easement.[3] We conclude that the easement encompasses the use of the property for wireless telecommunications, but that the trial court improperly rendered summary judgment in favor of the defendant because there were material issues of fact as to whether the defendant had obtained easement rights from the power company and whether the defendant's use had overburdened the easement. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings.

The record reveals the following facts and procedural history. The plaintiffs own real property located at 280 Morehouse Drive in Fairfield. In 1923, the plaintiffs' predecessor in title conveyed by deed to the power company, "an easement . . . for poles, towers and wires for the transmission of electric current . . . ." The deed conveyed, inter alia, the right to "enter upon said land and erect, inspect, operate, replace, repair and patrol, and permanently maintain on said right of way, poles and towers, with necessary conductors, wires . . . and other usual fixtures and appurtenances used or adapted for the transmission of electric current for light, heat, power or any other purpose, and used or adapted for telephone purposes . . . ." The deed was duly recorded. On March 1, 2000, the plaintiffs acquired title to the subject property by quitclaim deed.

---

[3] The plaintiffs' statement of issues on appeal sets forth six claims. We conclude that the plaintiffs' first and second issues are subsumed under the broader question of whether the trial court properly construed the scope of the easement to include wireless telecommunications. The plaintiffs' third and fourth issues are subsumed under the broader question of whether the trial court properly concluded that the defendant had obtained a valid partial assignment of easement rights from the power company. The plaintiffs' fifth issue pertains to the overburdening claim. The sixth issue asserted by the plaintiffs—whether the trial court erred in interpreting public policy issues inconsistently with the unambiguous language of the easement—was not addressed by the trial court and therefore we need not address it.

Prior to the plaintiffs acquiring title, certain equipment had been installed in the area subject to the easement. The power company had installed a steel lattice tower structure, which rested on a cement pad, to support electric wires. A wood stockade fence surrounded the structure. Sprint, another wireless telecommunications company, had installed a monopole that supported telecommunications antennas, which ran through the middle of the power company's lattice tower, and an equipment cabinet on the cement pad.

The defendant is licensed by the Federal Communications Commission to hold a "Wideband PCS" license for personal communication services covering an area that includes the entire state of Connecticut. The defendant provides wireless service in the form of voice-data telephone systems, offering its customers "state-of-the-art communications service with privacy to users, and the convenience of a pager, answering machine, and modem in one phone." The defendant determined that it needed an antenna on the tower situated on the plaintiffs' property to allow it to achieve cellular coverage on the Merritt Parkway and thereby establish a link to other sites for more contiguous coverage. Pursuant to a request by the defendant, on June 28, 2000, the power company issued a letter regarding "[s]ite [p]ermitting [a]uthorization" (authorization letter), granting the defendant permission to obtain any permits necessary to construct and maintain a wireless communications system and antenna site on the plaintiffs' property over which the power company had easement rights. On September 1, 2000, the Connecticut siting council issued a letter to the defendant notifying it that the siting council had approved the defendant's petition to modify the power company's existing electric transmission facility. In December, 2000, the defendant entered onto the plaintiffs' property and installed its antenna under the existing antennas on the monopole.

By way of a complaint dated February 2, 2001, the plaintiffs commenced this trespass action, seeking damages and injunctive relief. On March 7, 2001, the defendant filed a motion for summary judgment, claiming that the deed granting the easement authorizes it to undertake the actions challenged by the plaintiffs. Specifically, the defendant contended that the power company has easement rights for "telephone purposes," which includes wireless telephone equipment, and the deed permits the power company to assign to the defendant the authority to install such equipment. The plaintiffs opposed the defendant's motion for summary judgment on the grounds that: (1) the deed does not grant easement rights for wireless telecommunications, but, rather, only for the transmission of electric current; (2) the defendant did not obtain a valid assignment of the power company's easement rights because the deed does not permit a partial assignment and there was no evidence of an assignment; and (3) in the alternative, that the defendant's use overburdened the easement. With respect to their overburdening claim, the plaintiffs attested that the defendant recently had expanded a gravel driveway to reach a stone wall on the plaintiffs' property and had installed, inter alia, a wood utility pole with a transformer and electrical cabinets both inside and outside the wood fence surrounding the lattice tower structure. On May 17, 2001, the plaintiffs filed a cross motion for summary judgment.

After hearing argument on the motions, the trial court rendered summary judgment in favor of the defendant. In its memorandum of decision, the trial court rejected the plaintiffs' construction of the deed limiting the power company's easement rights solely for the transmission of electric current. The trial court concluded that the deed had granted easement rights for both "the transmission of electric current" and "telephone purposes." The court further concluded that, under this

court's decision in *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 717 A.2d 1232 (1998), courts should construe easements to allow beneficiaries to incorporate technological advances into their use. It therefore construed "telephone purposes" to encompass wireless telecommunications. With respect to the validity of the defendant's assignment of rights from the power company, the trial court noted that the claim raised an issue of first impression and turned to case law from other jurisdictions, under which the dispositive issue is whether the deed grants an exclusive or nonexclusive easement. The trial court found that the power company had obtained an exclusive easement and, accordingly, it was entitled to make a partial assignment of its rights to the defendant. Finally, the trial court refused to address the plaintiffs' overburdening claim on the ground that they had not pleaded overburdening, which the court concluded was a separate cause of action from the plaintiffs' trespass action. Accordingly, the trial court granted the defendant's motion for summary judgment and denied the plaintiffs' cross motion for summary judgment. This appeal followed.

Before turning to the merits of the plaintiffs' claims, we note the well established standards that guide our inquiry. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 83, 856 A.2d 372 (2004). "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omit-

ted.) *Allstate Ins. Co.* v. *Barron,* 269 Conn. 394, 406, 848 A.2d 1165 (2004).

In addition, to determine whether the trial court properly concluded that the defendant had the right, pursuant to the power company's easement, to use the plaintiffs' property for wireless telecommunications, our paramount consideration is the intent of the parties to the deed creating the interest. *Abington Ltd. Partnership* v. *Heublein,* supra, 246 Conn. 831. We look to the intent as expressed in the deed, considering all of its relevant provisions and reading it in the light of the surrounding circumstances. *Lago* v. *Guerrette,* 219 Conn. 262, 267–68, 592 A.2d 939 (1991). We give the language of the easement its ordinary import when nothing in the situation or surrounding circumstances indicates a contrary intent. Id., 268; *American Brass Co.* v. *Serra,* 104 Conn. 139, 142, 132 A. 565 (1926). Although in most contexts the issue of intent is a factual question over which our scope of review is limited, the construction of a deed, considered in the light of all the surrounding circumstances, presents a question of law over which we exercise plenary review. *Carbone* v. *Vigliotti,* 222 Conn. 216, 222, 610 A.2d 565 (1992); *Kelly* v. *Ivler,* 187 Conn. 31, 39, 450 A.2d 817 (1982). With these principles in mind, we turn to the plaintiffs' claims.

I

The plaintiffs first claim that the trial court improperly construed the deed to grant easement rights for wireless telecommunications. The plaintiffs contend that the deed grants easement rights only for the transmission of electric current, which can be used for several "purposes"—heating, light, power *and telephone.* Because wireless telecommunications provide telephone service through the transmission of radio waves, not electric current, the plaintiffs assert that such use

is not permitted under the easement. Therefore, they contend that the trial court improperly applied this court's decision in *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 815, to construe "telephone purposes" to include wireless telecommunications because the deed evinces a clear intent to the contrary. The plaintiffs further contend that the defendant cannot prevail under *Heublein* because they presented sufficient evidence that the defendant's use of the easement for wireless telecommunications had caused unreasonable damage to their property.

The defendant disagrees that the deed evinces a clear intent to preclude wireless telecommunications. It contends, therefore, that the trial court properly concluded that wireless telephone is merely an advance in telephone technology, and thus the easement for "telephone purposes" should be construed to include wireless telecommunications. We agree generally with the defendant, but conclude that the trial court improperly applied *Heublein* in part because it had failed to consider whether the defendant's use of the easement for wireless telephone purposes would cause unreasonable damage to the plaintiffs' property.[4]

Our analysis is guided by our decision in *Heublein*. In *Heublein*, the substantive issue on appeal was

---

[4] Our rules of construction regarding reading ambiguities in favor of a particular party potentially are in conflict in the present case. One rule provides that "[a]ny ambiguity in the instrument creating an easement, in a case of reasonable doubt, [is] construed in favor of the grantee." (Internal quotation marks omitted.) *Lago* v. *Guerrette*, supra, 219 Conn. 268. That rule would favor the power company and, hence, the defendant. Another fundamental rule provides, however, that an ambiguity is construed against the party that drafted the instrument. *Goldberg* v. *Hartford Fire Ins. Co.*, 269 Conn. 550, 562, 849 A.2d 368 (2004). Although it is not clear which party drafted the deed of conveyance at issue here, we note its remarkable similarity to standard deed forms drafted by the power company that have been presented to this court previously. See *Connecticut Light & Power Co.* v. *Holson Co.*, 185 Conn. 436, 438–39 and n.1, 440 A.2d 935 (1981). Therefore, we decline to apply either default rule.

whether an easement of access could extend to adjacent property acquired by the easement holder after the easement had been conveyed. Id., 817. Although we reversed the trial court's judgment on procedural grounds, we provided guidance to the trial court for the remand on the substantive issue. Id., 827. Significantly, we adopted the position set forth in certain provisions of the Restatement (Third) of Property that recently had been approved.[5] Id., 829–32; see 1 Restatement (Third), Property, Servitudes §§ 4.1 and 4.10 (2000).[6] We noted that "§ 4.1 of the Restatement (Third) [supra] makes the intentions or the reasonable expectations of the parties the overarching consideration in the construction of a servitude. Only if the rules of § 4.1 are not fully applicable do supplemental principles, set forth in [§ 4.10 of

[5] In *Heublein*, we relied on the Tentative Draft of the Restatement (Third) of Servitudes that recently had been adopted by the American Law Institute. See *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 830 n.20. In 2000, the official Restatement (Third) was published with editorial modifications. References and cites herein to the Restatement (Third) are to the 2000 edition.

[6] Section 4.1 of the Restatement (Third), supra, provides: "Interpretation of Servitudes

"(1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.

"(2) Unless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred."

Section 4.10 of the Restatement (Third), supra, provides: "Use Rights Conferred by Easements and Profits

"Except as limited by the terms of the servitude determined under § 4.1, the holder of an easement or profit as defined in § 1.2 is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and · to accommodate normal development of the dominant estate or enterprise benefited by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment."

the Restatement (Third), supra], provide additional guidance. Subject to the proviso that the servitude beneficiary is not entitled to cause unreasonable damages to the servient estate, or interfere unreasonably with its enjoyment, § 4.10 permits the beneficiary of an easement to make any use of the servient estate that is reasonably necessary for the convenient enjoyment of the servitude for its intended purpose. The manner, frequency, and intensity of the beneficiary's use of the servient estate may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude." (Internal quotation marks omitted.) *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 831.

Although the factual context in *Heublein* differed substantively from that in the present case, because it did not involve technological developments affecting the manner and use of the easement, one of the Restatement (Third) provisions we adopted therein does address the situation here. Notably, one illustration given in the Restatement (Third) is directly on point. "Telephone Company holds easements acquired in the 1940s to maintain poles and lines for telephone purposes. In the absence of other facts or circumstances, it would be proper to conclude that Telephone Company may mount transmitters on its poles for cellular telephone transmissions unless the transmitters or transmissions would unreasonably interfere with enjoyment of the servient estate." 1 Restatement (Third), supra, § 4.10, illustration 13, p. 598. This illustration demonstrates that an easement holder can take advantage of developments in technology unless the parties creating the interest evinced a contrary intent or the proposed use would interfere unduly with the rights of the owner of the servient estate.

Applying the principles set forth in *Heublein* and the Restatement (Third) to the present case, the threshold issue is whether, at the time the easement was created, the parties intended for the easement to be used solely for the transmission of electric current, as the plaintiffs claim, or whether they also intended for the easement to be used for telephone purposes irrespective of whether those services were provided by the transmission of electric current. The sole evidence proffered by the plaintiffs on this issue was the deed itself. [7] Accordingly, we turn to that instrument.

The deed provides for the right to operate and maintain various equipment *"used or adapted for* the transmission of electric current for light, heat, power or any other purpose, *and used or adapted for* telephone purposes . . . ."* (Emphasis added.) The fact that the phrase "used or adapted for" is used twice, preceding both "the transmission of electric current" and "telephone purposes," strongly suggests that the parties intended for the easement to extend to both uses. Compare *Edgcomb* v. *Lower Valley Power & Light, Inc.*, 922 P.2d 850, 853–858 (Wyo. 1996) (easement granting right to operate and maintain "electric transmission and/or distribution line or system" and to permit use of line by third parties "for electrification or telephone purposes" construed to permit defendant utility company to replace static telephone line with fiber optic cable). Had the parties necessarily intended for the easement to be used for telephone purposes only if provided by the transmission of electric current, there would have been no need for the catch-all phrase "or any other purpose . . . ." See *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 674, 791 A.2d 546

---

[7] At oral argument in the trial court, the defendant conceded that, in 1923, the parties could not have envisioned the advent of wireless telephone and, therefore, did not offer any extrinsic evidence of the original parties' intent to create an easement specifically to include wireless telecommunications.

(2002) ("[t]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous"). Although we recognize that the introductory paragraph of the deed references only an easement for the transmission of electric current, that fact does not overcome strong evidence of a contrary intent in the more specific provision setting forth the permissible uses of the easement. Cf. *Galvin* v. *Freedom of Information Commission*, 201 Conn. 448, 456, 518 A.2d 64 (1986) ("[w]here statutes contain specific and general references covering the same subject matter, the specific references prevail over the general"). Therefore, we conclude, on the basis of the language of the deed, that the trial court properly construed the deed to grant an easement both for "telephone purposes" and for the transmission of electric current.

Turning to the application of *Heublein* to an easement for telephone purposes, we note that the plaintiffs do not contend that *Heublein* cannot be applied to permit the use of the easement in the present case for wireless telephone because it is not an advancement in 1923 telephone technology. Rather, they claim that *Heublein* does not permit such use because the intent of the original parties to the deed was to limit telephone purposes to that provided by electric current. This claim, however, is founded on the same premise that we already have rejected. Accordingly, the trial court's determination that the parties to the deed did not intend to limit use of the easement for telephone purposes necessarily triggered the presumption under *Heublein* that wireless telecommunications was a permissible use of the easement as a development in telephone technology.

*Heublein* recognized, however, a limitation on the easement holder's right to take advantage of developments in technology. The easement holder may not, in

the course of using new technologies, "cause unreasonable damages to the servient estate, or interfere unreasonably with its enjoyment . . . ." *Abington Ltd. Partnership* v. *Heublein,* supra, 246 Conn. 831; 1 Restatement (Third), supra, § 4.10. In other words, the new technology cannot overburden the servient estate. The defendant proffered no evidence on this issue,[8] but the plaintiffs attested to several facts in opposition to the defendant's motion for summary judgment evidencing that the defendant's use may have caused unreasonable harm and unreasonably interfered with their enjoyment of the property. Because the trial court failed to examine this issue, it improperly granted summary judgment in favor of the defendant.[9]

[8] Neither the Restatement (Third), supra, nor case law addressing the use of easements through new technology indicates whether the easement holder or the owner of the servient estate has the burden of proof with respect to the reasonableness of the use. Typically, the owner of the servient estate has the burden of proving overburdening because the servient owner has asserted overburdening as a cause of action or as a reply to a special defense of an easement when the purpose of the easement is not in dispute. See, e.g., *Abington Ltd. Partnership* v. *Heublein,* 257 Conn. 570, 577, 778 A.2d 885 (2001) (asserting overburdening as cause of action). When the easement holder is seeking to take advantage of *Heublein* and extend easement rights to a different technology, however, the easement holder knows best how it will implement this new technology, especially when these facts may be unknown to the servient owner until well after the easement is altered to accommodate the new technology. Therefore, we conclude that, under such circumstances, the party seeking to extend the easement should bear the burden of producing some evidence to demonstrate that its intended use of the easement will not unreasonably burden the servient estate. Cf. *Somers* v. *LeVasseur,* 230 Conn. 560, 567, 645 A.2d 993 (1994) (concluding that defendant seeking to extend right-of-way obtained by prescriptive easement beyond prior use had "burden to persuade the court that installation of the electrical utility lines [1] was reasonably necessary for the continued enjoyment of the right-of-way, and [2] would not unreasonably burden the plaintiffs' property"). The servient owner is, of course, free to proffer evidence on that issue as well, as it may view the nature of the burden or what is reasonable through a very different lens than that of the easement holder.

[9] In light of this conclusion, we need not reach the plaintiffs' claim that the trial court improperly failed to consider independently their claim of overburdening, as the trial court will need to consider the plaintiffs' evidence on that issue on remand.

## II

The plaintiffs' second claim is that the trial court improperly concluded that the defendant had obtained a valid easement. Although our conclusion in part I of this opinion requires that we reverse the judgment of the trial court, we reach this claim because it raises both legal and factual issues likely to arise on remand and some guidance to the trial court may be helpful. See *State* v. *Ceballos*, 266 Conn. 364, 367, 832 A.2d 14 (2003).

The plaintiffs concede that the power company was entitled, under the deed, to assign its easement rights in their entirety, but contend that it could not partially assign the easement rights to a third party. They further contend that there was no evidence before the trial court to prove that the power company had conveyed to the defendant *any* legal rights with respect to the easement. We disagree that the power company could not assign in part its easement rights, but we agree that there was no evidence before the trial court that the power company in fact had conferred such rights on the defendant.

### A

The issue of whether the power company could partially assign its easement rights raises, as the trial court recognized, an issue of first impression in this court.[10]

---

[10] The plaintiffs rely on our decision in *Mellon* v. *Century Cable Management Corp.*, 247 Conn. 790, 725 A.2d 943 (1999). That case is inapposite. In *Mellon*, the defendant installed cable lines on the plaintiff's property, claiming that it had obtained a license to do so pursuant to the power company's easement over the plaintiff's property. Id., 793–94. Significantly, the defendant conceded that the power company had not obtained easement rights pursuant to a written instrument, and this court rejected the defendant's only other easement theory—easement by estoppel. Id., 794–97. Accordingly, the power company lacked authority to convey a license. Id., 793. Here, as the plaintiffs concede, the power company obtained an easement pursuant to a deed, and that deed grants the power company the authority to assign in full its rights.

"Courts have generally concluded [however] that an easement in gross is capable of division when the instrument of creation so indicates or when the existence of an 'exclusive' easement gives rise to an inference that the servitude is apportionable." J. Bruce & J. Ely, Jr., The Law of Easements and Licenses in Land (2001) § 9:9, pp. 9-15 through 9-16; accord 4 R. Powell, Real Property (2000) § 34.16. In this context, "exclusive" means that the "easement holder has the sole right to engage in the type of use authorized by the servitude." J. Bruce & J. Ely, Jr., supra, p. 9-16. In other words, the grantor does not retain common rights with the easement holder to engage in the same activity for which the easement is granted. See *Hoffman* v. *Capitol Cablevision Systems, Inc.*, 52 App. Div. 2d 313, 315, 383 N.Y.S.2d 674 (1976) (finding easement exclusive because grantor never had attempted to engage in distribution of electricity). This common versus exclusive rights distinction is predicated on the notion that "one who grants to another the right to use the grantor's land in a particular manner for a specified purpose but who retains no interest in exercising a similar right himself, sustains no loss if, within the specifications expressed in the grant, the use is shared by the grantee with others. On the other hand, if the grantor intends to participate in the use or privilege granted, then his retained right may be diminished if the grantee shares his right with others." *Henley* v. *Continental Cablevision of St. Louis County, Inc.*, 692 S.W.2d 825, 827–28 (Mo. App. 1985); accord 2 Restatement (Third), supra, § 5.9, comment (b). We agree that the grant of an exclusive easement implicitly confers the authority to apportion those easement rights to third parties.[11]

---

[11] In light of this conclusion, we need not reach the argument asserted in the amicus brief that a partial assignment is permitted per se under General Statutes § 47-42, even in the absence of a grant of such rights pursuant to the instrument creating the interest. This statute was amended in 1995 to permit partial assignments by public utility companies, well after the deed in the present case was executed in 1923. Public Acts 1995, No. 95-217, § 5.

In light of these principles, we turn to the case at hand. Following the deed provision setting forth the power company's easement rights, the grantor set forth only one limitation: "Reserving, however, to myself and to my heirs and assigns, the right to cultivate the ground between said poles and towers and beneath said wires, provided that such use shall not interfere with or obstruct the rights herein granted." Although such a reservation is not construed as limiting the rights of the servient owner to only those rights expressly reserved, the reservation reasonably suggests the parties' intent to convey an exclusive easement to the power company for the purposes set forth in the deed. See *Connecticut Light & Power Co.* v. *Holson Co.*, 185 Conn. 436, 441–42, 440 A.2d 935 (1984) ("By granting an easement, a grantor conveys to the grantee only that which is specifically expressed in the document, and retains all use of the land not inconsistent with the grantee's use and enjoyment of the easement. . . . A reservation clause does not operate to preclude other uses by the grantor not specifically reserved unless such intent is clearly expressed." [Citations omitted.]); cf. *Centel Cable Television Co. of Ohio, Inc.* v. *Cook*, 58 Ohio St. 3d 8, 10, 567 N.E.2d 1010 (1991) (concluding that easement was exclusive and apportionable when granting instrument prohibited grantor from doing anything inconsistent with terms of easement or from constructing buildings or other structures within limits of easement). In addition to the fact that the grantor reserved the right to engage in an activity bearing no relationship to the purposes for which the easement was granted, there is no evidence that the servient owners ever have attempted to use their property since 1923 for the provision of heat, light, power or telephone

Accordingly, we decline to address unnecessarily an issue that implicates the constitutional question of impairment of contractual obligations. We note, however, that our conclusion with respect to exclusive easements and the concomitant right to partially assign is consistent with § 47-42.

services. The trial court, therefore, properly determined that the deed conveyed an exclusive easement to the power company and, accordingly, the power company had the right to authorize the defendant to use the easement to the extent that the defendant's use was consistent with the purpose for which the easement was granted.[12]

## B

The fact that the power company *could*, as a matter of law, make a partial assignment does not, as the trial court implicitly seemed to conclude, inexorably lead to the conclusion that it in fact *had* made such an assignment. The plaintiffs contend that there was no evidence before the trial court that the power company had assigned easement rights to the defendant. The defendant expressly conceded at oral argument before the trial court that there was an issue of fact as to whether the power company had assigned its easement rights.[13] Our review of the record before the trial court in deciding the motions for summary judgment clearly supports the plaintiffs' contention that there was no evidence of such an assignment or any other legal enti-

---

[12] Many courts, after addressing whether the particular easement rights may be apportioned, have proceeded to analyze whether the apportionment will overburden the servitude. See J. Bruce & J. Ely, Jr., supra, § 9:9, pp. 9-16 through 9-17. We conclude that such a factual inquiry is unnecessary in the present case, however, in light of our conclusion in part I of this opinion that overburdening must be considered on remand and in light of our conclusion in part II B of this opinion that the defendant failed to prove that the power company had conveyed any legal rights to the defendant.

[13] In response to the plaintiffs' argument to the trial court, inter alia, that there was no evidence of an assignment, counsel for the defendant stated: "The question of the assignment, I think, is not before you today. I would . . . also ask the court to note that there is no information about that in the plaintiffs' pleadings. There are no affidavits to that point. [The power company] has obviously not challenged the assignment, and I question whether the plaintiffs [have] standing to raise that issue at all. But in any event, it is not before the court today. It would be an issue of fact."

tlement for the defendant to use the easement.[14] Moreover, it is clear that the defendant bore the burden of proving such an entitlement in order to prevail on summary judgment.

"It is an elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case or establish his defense, the burden is on such party to show the existence of such fact." (Internal quotation marks omitted.) *Nikitiuk* v. *Pishtey*, 153 Conn. 545, 552, 219 A.2d 225 (1966); see C. Tait, Connecticut Evidence (3d Ed. 2001) § 3.3.1, p. 136 ("[w]hoever asks the court to give judgment as to any legal right or liability has the burden of proving the existence of the facts essential to his or her claim or defense"). Therefore, as the proponent of the defense that it was entitled to enter and use the plaintiffs' property pursuant to easement rights it had obtained from the power company, the defendant had the burden of proof as to that fact.[15] See *Branch* v. *Occhionero*, 239 Conn. 199, 205,

[14] The only evidence before the trial court on this issue was the authorization letter sent by the power company to the defendant. In that letter, however, the power company merely authorized the defendant to apply for permits necessary for the defendant to operate and maintain a wireless telecommunications system on its easement over the plaintiffs' property. Most significantly, the authorization letter clearly provides in relevant part: "This authorization shall not be deemed or construed to grant or transfer to [the defendant] any interest in the property, whatsoever, and shall not in any respect obligate or require [the power company] to sell, lease or license the [p]roperty to [the defendant] or otherwise allow [the defendant] to use or occupy the property for any purpose, regardless of whether any licenses, permits and approvals applied for by [the defendant] for the property are granted. . . ."

[15] The defendant initially asserted a general denial to the plaintiffs' claim that it had trespassed by entering onto the plaintiffs' property without their permission. The defendant then asserted for the first time in its motion for summary judgment that the plaintiffs could not prevail on their trespass action because it had obtained an easement. As a fact that was consistent with the plaintiffs' allegation of lack of permission, but that nonetheless showed that the plaintiffs had no cause of action, the defendant should have pleaded its claim of easement as a special defense. See *Coughlin* v. *Anderson*, 270 Conn. 487, 502, 853 A.2d 460 (2004) ("[U]nder a denial, a party generally may introduce affirmative evidence tending to establish a

681 A.2d 306 (1996) (defendant asserting right-of-way as special defense to plaintiff's quiet title action had burden of proving all facts necessary to prove defense).

In the absence of such evidence, the trial court improperly found that the defendant had a valid assignment of easement rights from the power company. See *Frillici* v. *Westport*, 264 Conn. 266, 277, 823 A.2d 1172 (2003) ("finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" [internal quotation marks omitted]). Accordingly, the trial court improperly concluded that there was no material issue of fact and that the defendant was entitled to summary judgment as a matter of law.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other justices concurred.

---

set of facts inconsistent with the existence of the disputed fact. . . . If, however, a party seeks the admission of evidence which is consistent with a prima facie case, but nevertheless would tend to destroy the cause of action, the new matter must be affirmatively pleaded as a special defense." [Internal quotation marks omitted.]); see also Practice Book § 10-50. Nonetheless, the plaintiffs may be deemed to have waived their right to contest that procedural defect by failing to object to the introduction of evidence on the issue. *Damora* v. *Christ-Janer*, 184 Conn. 109, 112, 441 A.2d 61 (1981); *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 318, 757 A.2d 608 (noting that this principle is equally applicable in context of summary judgment as it is in context of trial), cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).